## MAGIDSON v. DUGGAN.
### No. 14015.

United States Court of Appeals
Eighth Circuit.
Feb. 16, 1950.

Rehearing Denied March 8, 1950.
Writ of Certiorari Denied May 29, 1950.
See 70 S.Ct. 1000.

James D. Dockery, St. Louis, Mo. (Max Sigoloff, St. Louis, Mo., on the brief) for appellant.

George O. Durham, St. Louis, Mo. (Sherman Landau, St. Louis, Mo., on the brief) for appellees.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal from an order entered in reorganization proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., overruling a motion of Phil Magidson to vacate and set aside (1) an order staying certain proceedings in the Circuit Court of the City of St. Louis, Missouri, and (2) granting leave to Jerome F. Duggan, trustee of the debtor corporation, to file a dependent suit in the federal district court. The appellant contends that the order was erroneously entered. This court has jurisdiction of the appeal by virtue of 28 U.S.C.A. § 1292(1).

## Statement.

On December 27, 1943, the Christopher Engineering Company filed its petition for corporate reorganization under Chapter X of the Bankruptcy Act, which was approved, and the appellee Duggan was appointed trustee on February 8, 1944. On June 1, 1945, Hascal Schneider and Max Schneider, doing business as Seco-Lite Manufacturing Company, instituted an action in the Circuit Court of the City of St. Louis for a declaratory judgment against the appellant Magidson. That suit involved the ascertainment and distribution of the profits, if any, derived from a joint enterprise between the Schneiders and Magidson, undertaken about July 15, 1943, at which time Magidson was an employee of the debtor. Magidson filed an answer and counterclaim in the declaratory judgment action and a motion to appoint a receiver to take charge of the alleged earnings of the adventure. On stipulation of the parties to the action and in lieu of the appointment of a receiver, the Schneiders deposited $90,000.00 in the registry of the state court which sum represented substantially all of the undistributed profits of the adventure. On November 8, 1946, the trustee applied for and secured leave from the court presiding over the reorganization to apply for intervention in the state court action, claiming that the debtor became subrogated to Magidson's rights as against the Schneiders because Magidson's profits in the Schneider-Magidson enterprise accrued from Magidson's employment by the debtor and belonged in equity to the debtor. The trustee applied to the state court for leave to intervene, which application Magidson opposed, and after a hearing in the state court, December 11, 1946, the court denied the trustee's petition. The trustee then filed a petition for a writ of mandamus to the Supreme Court of Missouri with the result that the lower court's ruling was reversed and the trustee allowed to intervene. State ex rel. Duggan v. Kirkwood, Judge, Mo.Sup., 208 S.W.2d 257, 2 A.L.R.

2d 216. On March 26, 1948, the state court ordered the trustee's intervening petition received and filed. On July 1, 1948, the trustee made application to the bankruptcy court for leave to file a dependent complaint against Magidson and the Schneiders in the federal court, which the bankruptcy court denied. The trustee then filed an amended intervening petition in the state court the sufficiency of which Magidson assailed by motion, and while that motion was under submission, the Schneiders on January 7, 1949, filed in the action an amended petition for declaratory judgment against Magidson in which they joined the trustee as a defendant. Magidson immediately filed an answer and counterclaim and on January 18, 1949, the trustee filed an "answer and cross bill" and "cross claim" against both Magidson and the Schneiders. Magidson then filed another motion to dismiss the trustee's "answer and cross bill" and "cross claim." Without ruling on that motion the state court, after a pre-trial conference, ruled that the dispute between the trustee and Magidson was a separate and distinct controversy; that the principal cause of action in the state court was the dispute between Magidson and the Schneiders which would be tried first; and that the trustee's claim against Magidson would be tried following that, depending upon the outcome of the principal suit. The controversy between Magidson and the Schneiders was set down for trial on April 11, 1949. On March 17, 1949, the trustee again appeared in the bankruptcy court and requested leave to file in the federal court a dependent complaint against Magidson and the Schneiders. It was alleged in that complaint that the trustee was being hindered and delayed in collecting the assets of the debtor, and it was prayed:

"That a proper order be issued staying [the] proceedings in the Circuit Court and impounding the said deposit [$90,000] in said Court, pending the further orders of this Court, and, in good time, for an order for the delivery of said fund and the disposition thereof."

And:

"That the Court first hear and determine the title of the plaintiff [trustee] to said profits as against the claim of defendant Phil Magidson thereto and, in the event the title of plaintiff thereto is confirmed and no voluntary settlement, as between plaintiff and said co-partners [the Schneiders], satisfactory to the Court under the Bankruptcy Act is effected that the Court in good time take and state an account of the amount due plaintiff from said defendants as subrogee and render judgment accordingly, against the said defendants and the security or fund aforesaid."

There was no opposition to the trustee's motion by either Magidson or the Schneiders. The trial court thereupon ordered the dependent suit received and filed, process for the defendants was issued, and pending further order, the court temporarily stayed the state court proceedings and issued an order to show cause on March 22, 1949. Magidson appeared on that date, filed a written return and moved the court to set aside the stay order and to recall the leave granted permitting the dependent action, urging among other things that the court exceeded its jurisdiction. A full hearing was had and on April 12, 1949, Magidson's motion was overruled, the stay order was made absolute and the dependent action was allowed to remain pending. Magidson now appeals from the order overruling his motion.

## Opinion.

(1) We believe the trial court did not exceed its jurisdiction in granting leave to the trustee of the debtor to file a dependent complaint in the federal court or in staying the proceedings in the state court. Appellant, in his reply brief, insists that the dispute between himself and the Schneiders in the state court is not ancillary to the reorganization proceedings, that the principal parties to the dispute in the state court are not parties to the reorganization proceedings, and that the trial court therefore clearly abused its discretion and exceeded its jurisdiction in taking the action it did. We think, however, that Section 2, sub. a(7) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(7) and the recent decision in the case of Williams v. Austrian, 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718,

dispel any doubt that the court presiding over the reorganization proceedings had power to permit the dependent action to be filed by the trustee, and that the federal court was vested with full jurisdiction to entertain the dependent suit and that the action involving the same dispute in the state court was properly stayed. The doubts and conflicts that have heretofore existed as to a United States District Court having jurisdiction to entertain and determine plenary actions brought to collect assets of a debtor in reorganization were settled and removed by the Supreme Court in the Austrian case. That case is the short answer to appellant's contention that the lower court lacked jurisdiction. In the Austrian case trustees were appointed for a Virginia corporation in reorganization in the District Court for the Eastern District of Virginia. The trustees were subsequently authorized to institute suit against Williams and others, past and present officers and directors of the debtor corporation, and others, for breaches of trust and for conspiring to waste, destroy and misappropriate and otherwise wrongfully deal with the property and assets of the debtor. The trustees filed the suit in the District Court for the Southern District of New York. There was no allegation of diversity of citizenship. The District Court dismissed for lack of jurisdiction, 67 F.Supp. 223. The Court of Appeals, Second Circuit, reversed, holding that since the governing provision of Section 23[1] of the Bankruptcy Act, 11 U.S.C.A. § 46, to which the exception clause in Section 2, sub. a(7), supra, refers, was eliminated in reorganization proceedings, jurisdiction to hear this plenary suit followed from the general language of Section 2. Austrian et al. v. Williams et al., 2 Cir., 159 F.2d 67. The Supreme Court affirmed, Justices Jackson and Frankfurter dissenting, and after an exhaustive research and a setting out of the legislative history and cases involved, the court stated, 331 U.S. page 661, 67 S.Ct. page 1452: "Our holding is, of course, that Congress in 1938 extended the jurisdiction of the reorganization courts beyond that exercised by ordinary bankruptcy courts. Section 2 of the 1898 Act contained the broad language borrowed from § 1 of the Act of 1867. But the exception to § 2 sub. a(7) acknowledged the overriding limitations of § 23, which was the embodiment of Congressional policy to exclude from the bankruptcy courts many of the trustee's plenary suits. That same meaningful section was expressly eliminated in 1938 in the process of perfecting a chapter of the Bankruptcy Act dealing with the distinctive and special proceedings in corporate reorganization. Cf. Continental Illinois Nat. Bank & Trust Co. v. Chicago Rock Island & P. R. Co., 1935, 294 U.S. 648, 676, 55 S.Ct. 595, 606, 79 L.Ed. 1110. This negation of long-standing policy should be given effect consistent with the aims of Chapter X and should not be hedged by judge-made principles not in accord with those aims. Congress need not document its specific actions in elaborate fashion in order to direct this Court's attention to statutory policy and purpose. The failure to provide appropriate fanfare for the suspension of § 23 in Chapter X cases, and for the consequent expansion of federal jurisdiction, hardly invites our opinion as to the advisability of the action which Congress has taken. Judicial drives to limit the jurisdiction of federal courts

1. Sec. 23, 11 U.S.C.A. § 46,

    a. The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings under this title, between receivers and trustees as such and adverse claimants, concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

    b. Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this title had not been instituted, unless by consent of the defendant, except as provided in sections 96, 107, and 110 of this title. As amended May 27, 1926, c. 406, Sec. 8, 44 Stat. 664; June 22, 1938, c. 575, Sec. 1, 52 Stat. 854.

should not lead to decision falling short of complete effectuation of statuory scheme. With the limitations of § 23 suspended, § 2 confers jurisdiction upon all reorganization courts to hear plenary suits brought by a Chapter X trustee."

Indeed, the court was unanimous on the question of plenary jurisdiction of the reorganization court, but the two dissenting Justices concluded that Sec. 23 was eliminated not to confer plenary jurisdiction on *all* District Courts, but merely to make certain that Chapter X would not be construed to limit the jurisdiction of the "home" court. See Justice Frankfurter's dissenting opinion, 331 U.S. pages 678–679, 67 S. Ct. page 1461, where he stated: "To remove doubt as to this effect of § 23, namely its possible limitation upon the power of the reorganization trustee to sue in his home court, is the full purpose and scope of its elimination from Chapter X. It was not to give the reorganization trustee roving authority for plenary suits in all federal courts that § 23 was made inapplicable. * * * Section 23 was eliminated, then, to make clear that when in § 115 of the Act of 1938 Congress [11 U.S.C.A. § 515], gave to the reorganization court equity powers like those which had been conferred in § 77B, sub. a [11 U.S.C.A. § 207, sub. a], it authorized the trustee-receiver to bring plenary suits in his home court. * * *"

That as an adjunct to its plenary jurisdiction, the trial court had the power to enjoin the state court proceedings there can be no serious doubt. Sec. 2 sub. a(15), 11 U.S.C.A. § 11, sub. a(15) of the Act itself provides:

"The courts of the United States hereinbefore defined as courts of bankruptcy * * * are hereby invested * * * with such jurisdiction at law and in equity * * * to—

"Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this title: Provided, however, that an injunction to restrain a court may be issued by the judge only ;".

Also in Chapter X of the Act, 11 U.S. C.A. § 515, there is the provision: "Upon the approval of a petition, the court shall have and may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere in this chapter conferred and imposed upon it, exercise all the powers, not inconsistent with the provisions of this chapter, which a court of the United States would have if it had appointed a receiver in equity of the property of the debtor on the ground of insolvency or inability to meet its debts as they mature."

And see Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island and Pacific R. Co., 294 U.S. 648, 676, 684–685, 55 S.Ct. 595, 79 L.Ed. 1110; In re Standard Gas & Electric Co., 3 Cir., 139 F.2d 149, 152.

Appellant contends, however, that the controversy presented in the state court is not ancillary to the reorganization proceedings. But Section 2, sub. a(7) of the Act, the Austrian case, and the circumstances involved in the state court dispute refute this contention.

Section 2, sub. a(7) of the Act, 11 U.S. C.A. § 11, sub. a(7) reads:

"The courts of the United States hereinbefore defined as courts of bankruptcy * * * are hereby invested * * * with such jurisdiction at law and in equity * * * to—

"Cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided, * * *".

The present dispute between the appellant Magidson and the Schneiders is clearly a "controversy in relation" to the reorganization proceedings since the trustee's asserted claim to equitable ownership of the fund involved in the suit in the state court, if proven, would very substantially increase the debtor's estate and thereby directly affect the reorganization. It must be remembered that the trustee's interest in the dispute between Magidson and the Schneiders springs from the trustee's allegation that he is the equitable and rightful owner of the moneys deposited by the

Schneiders and as such ought to be entitled to recover and receive it for the estate.

In the Austrian case, the court pointed out, 331 U.S. page 656, 67 S.Ct. page 1450, 91 L.Ed. 1718: "To interpret the elimination of § 23 in Chapter X cases as restricting the access of the trustee to the federal courts would not be in harmony with other provisions contemporaneously written into Chapter X and defining anew the position and functions of the reorganization trustee. The appointment of a disinterested trustee was made mandatory in appropriate cases, his qualifications were prescribed, and upon him were devolved functions aimed at eliminating the abuses of previous reorganization schemes. It was his duty to prepare the reorganization plan, and there were conferred upon him investigative powers and duties which not only contemplated the discovery of wrongs done the debtor by its former management, but also insured the 'prosecution of all causes of action' which might 'add to the assets of corporations in reorganization.' These provisions were 'of paramount importance in the revision of § 77B,' and are hardly indicative of a Congressional desire to restrict the trustee's choice of a forum in which to litigate plenary suits. On the contrary the conclusion more in accord with the purposes of Chapter X and with the pivotal position in which the trustee was placed is that Congress intended by the elimination of § 23 to establish the jurisdiction of federal courts to hear plenary suits brought by a reorganization trustee, even though diversity or other usual ground for federal jurisdiction is lacking."

We hold that the trial court committed no abuse of discretion and had complete jurisdiction of the dependent suit filed by the trustee against Magidson and the Schneiders.

We now turn to the other contentions for appellant. (2) Appellant insists that the trustee's complaint filed in the trial court, on its face and in the absence of any positive evidence outside the complaint, affords no "basis" for the granting of a stay by the trial court and that the court accordingly abused its discretion and acted improvidently in issuing the temporary stay. Appellant contends that no pleadings or affidavits were before the court when it heard and granted the trustee's oral motion for a temporary stay and leave to file the dependent suit. And that, further, the allegations in the complaint were insufficient to make out a case establishing the necessity for an absolute stay order.

When the oral application of the trustee for a temporary stay was granted, appellant did not appear or contest the granting of it although he had notice. The trial court's order to show cause afforded appellant additional and ample opportunity to be heard on all the merits involving both the stay and the dependent complaint. And in the proceedings to show cause, the complaint, duly filed, was before the court, and a full hearing was had on the merits. Nor did the court abuse its discretion in determining that the complaint afforded a basis for the stay order. The allegations of the trustee, if shown to be true in a hearing on the merits, which of course are not before this court, showed on their face that continuation of the proceedings in the state court might well hinder the trustee in expeditious collection of assets of the debtor. The state court proceedings had already involved long delay and longer delays were threatened. See Zeleznik v. Grand Riviera Theater Co., 6 Cir., 128 F. 2d 533, 536; Sword S. S. Line, Inc., et al. v. Vendramis, 2 Cir., 116 F.2d 665, 668; North American Car Corp. v. Peerless Weighing & Vending Machinery Corp., 2 Cir., 143 F.2d 938, 940.

(3) Appellant also asserts that "the District Court erred in not finding the facts specially and stating separately its conclusions of law and its failure to do so was contrary to and in violation of Rule 52(a) of the Federal Rules of Civil Procedure [28 U.S.C.A.]." The record shows that the appeal was taken from a ruling on a motion made by appellant and in disposing of it and in entering its order, the court treated it as a ruling on a motion. Rule 52(a), supra, provides: " * * * Findings of fact and conclusions of law are

·unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)." The considerations on which the court ruled are sufficiently clear from the record and pleadings, and although the situation was presented where the court might have made findings of fact, there was no real necessity for doing so. Cf. Baltimore & Ohio R. Co. v. Chicago River & Indiana R. Co., 7 Cir., 170 F.2d 654, 659.

■ (4) Appellant also urges that the trial court erred in not requiring a bond or other security in compliance with provisions of Rule 65(c), Federal Rules of Civil Procedure, which provides: "Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof." The temporary and permanent injunctions issued by the trial court in the instant case were to aid and preserve the court's jurisdiction over the subject matter involved and as such were not limited by Rule 65(c), supra. Swift v. Black Panther Oil & Gas Co., 8 Cir., 244 F. 20, 29–30; Doyne v. Saettele, 8 Cir., 112 F.2d 155, 162.

■ (5) Appellant further asserts that since the state court first assumed jurisdiction over the dispute between the Schneiders and himself that the trial court exceeded its jurisdiction in issuing the stay orders and permitting the trustee to file the dependent suit; that the rules of comity between federal and state tribunals were disregarded and that the forum where the trustee's claim was to be tried was settled in the state court by permission of the trial court itself. But the controversy at bar grows out of a reorganization proceeding under Chapter X, supra, and the rules of comity must be applied accordingly. There can be no doubt that the courts in reorganization proceedings under Chapter X have by virtue of the Act of 1938, as interpreted in the Austrian case, a much wider control over the collection of estates of debtors in reorganization than had ordinary bankruptcy courts. As stated in Warder v. Brady, 4 Cir., 115 F.2d 89, at page 93; "The rule of comity is relaxed with respect to proceedings under Ch. X." In that case, the federal district court presiding over reorganization proceedings under Chapter X, had stayed certain state court proceedings and had ordered the special receiver appointed by the state court to turn over to the trustee in reorganization funds which the receiver held. On appeal, the court said, 115 F.2d page 92: "Another restriction upon jurisdiction that has been recognized by the courts of bankruptcy (as well as courts of equity) is the rule of comity which forbids one court from exercising control over the property of the debtor which is already the subject of proceedings in another court, and permits the court first acquiring possession of the property to continue its administration without interruption until it is complete. This principle has had complete recognition in this and other federal courts. * * * If applied to the pending case, it would oust the jurisdiction of the bankruptcy court. * * * We are concerned in the pending case, however, with the Act of 1938 which was passed for the very purpose of modifying these restrictions upon the jurisdiction of the bankruptcy court when engaged in a reorganization proceeding under Ch. X of the statute. First, it is important to note that § 23 of the Act of 1938 does not affect the present controversy; for while it is provided by § 102, 11 U.S.C.A. § 502, that Chs. I to VII of the act (including therein § 23), to the extent that they are not inconsistent with Ch. X, shall apply to proceedings under that title. It is also provided that § 23 (and other sections) shall not apply in such a proceeding unless an order shall be entered by the court directing that bankruptcy be proceeded with pursuant to Chs. I to VII. Accordingly, the restrictions contained in Sec. 23 do not limit the jurisdiction of the court in the pending reorganization proceeding."

And cf. In re Maier Brewing Co., D.C., 38 F.Supp. 806.

We hold that in the instant case the rules of comity pertaining to federal and state tribunals were in no way disregarded or violated by the trial court and that it committed no error in that respect by staying the proceedings in the state court and receiving the dependent complaint filed by the trustee.

We find no error in the order appealed from and it is accordingly

Affirmed.