## CHATZ v. FREEMAN et al.

No. 10756.

United States Court of Appeals Seventh Circuit.

May 18, 1953.

Major, C. J., dissented.

Theodore D. Kahn, Max Chill, Chicago, Ill., for appellants.

Harold S. Lansing, Samuel B. Blanksten, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

The plaintiff-appellee, as Trustee in bankruptcy of Garland Construction Company, debtor, filed this action in the United States District Court for the Northern District of Illinois, on May 15, 1952. He named among other defendants, Harry Freeman and Kernal Freeman, appellants, who are co-partners, doing business as Freeman & Freeman.

By the complaint, plaintiff, as trustee of the corporate bankrupt, seeks an accounting from said defendants and a disclosure of all their transactions and dealings with the Garland Construction Company, the bankrupt corporation, and asks for an order restraining and enjoining defendants from transferring, encumbering or in any maner disposing of their interests in certain property, held in trust and otherwise, and further restraining them from transferring, paying out or in any manner disposing of any funds pertaining to any construction loans or projects in which the bankrupt may have an interest, until the further order of the court.

In this appeal Freeman & Freeman seek to reverse the order of October 1, 1952, issuing a temporary restraining order, because no provision was made therein requiring appellee to give the security provided for in rule 65(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Rule 65(c) provides as follows:

"No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof. As amended Dec. 27, 1946, effective March 19, 1948."

As to defendants, Freeman & Freeman, the complaint alleges in substance that the Bankrupt, Garland Construction Company, has been engaged in the acquisition of parcels of land in various suburbs of the Chicago area, and the erection thereon of small homes; that on or about February 15, 1950, the Bankrupt corporation retained the defendants, Harry Freeman and Kernal Freeman as its attorneys; that plaintiff is informed and believes that, commencing February 17, 1950, and prior to August 15, 1950, Freeman & Freeman advanced to the Bankrupt corporation the sum of $8,300 as a loan to assist in its operations and, thereafter, loaned and advanced various other sums; that in return for such cash advances by Freeman & Freeman the Bankrupt corporation transferred virtually all of its assets to them; also on information and belief, the plaintiff charges that although the Bankrupt paid the consideration therefor, Freeman & Freeman became the beneficial owners of certain parcels of real estate located in DuPage County, Illinois, Lake Zurich and Mundelein, Illinois, which were held in trust by the Central National Bank of Chicago; that in furtherance of a plan, Freeman & Freeman secured from the Bankrupt an assignment to them of all moneys out of various construction loans and mortgages due to Bankrupt for certain improvements it had built upon said lots; that acting under an instrument of assignment, Freeman & Freeman collected from

various lending and banking institutions, and from an insurance company, a total of $89,221.99 while they loaned to the Bankrupt corporation only the sum of $43,750; that subsequent to the filing of the Petition in Bankruptcy Freeman & Freeman withdrew moneys from loan accounts maintained by S. Yondorf & Company, and that there are undistributed loan balances with said company, which although assigned to Freeman & Freeman, rightfully belong to the Bankrupt; that Freeman & Freeman are now operating the Wheaton Subdivision, a prosperous enterprise, in which the Bankrupt had invested $25,000; that by virtue of their transactions with the Bankrupt, Freeman & Freeman have profited and will profit to an extent in excess of $100,000, and that all transfers of property from the filing of the Petition in Bankruptcy, are fraudulent against the Bankrupt's creditors within the purview of sec. 67, sub. d(2) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d(2), and should be set aside.

In their answer to the complaint, defendants Freeman & Freeman, deny that the parcels of real estate were ever the property of the Bankrupt or that the Bankrupt had ever paid any part of the consideration for said property, but aver that said property was paid for entirely by Harry Freeman and Kernal Freeman; they deny that they ever received from the Bankrupt any moneys in excess of what they loaned to it, and allege that in truth and in fact, at the time of the filing of the Petition in Bankruptcy, the Bankrupt was indebted to Freeman & Freeman in an amount in excess of $42,000.

Plaintiff contends: (1) that Rule 65(c) is not applicable to the instant case because it is inconsistent with the Bankruptcy Act; (2) that in a court of bankruptcy, the court may dispense with an injunction bond being given by a trustee in bankruptcy in a plenary suit.

In his brief and on oral argument in this court, plaintiff, in support of his first contention, argues that this plenary suit is a bankruptcy proceeding brought in a Bankruptcy Court under authority of sec. 67, sub. e, of the Bankruptcy Act.

Section 67, sub. e, sec. 107, title 11 U.S. C.A., provides:

"For the purpose of any recovery or avoidance under this section, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction."

Appellee then cites Rule 81(a) (1) of the Federal Rules of Civil Procedure, which provides as follows:

"(a) To What Proceedings Applicable.

"(1) These rules do not apply to proceedings in admiralty. They do not apply to proceedings in bankruptcy or proceedings in copyright under Title 17, U.S.C. except in so far as they may be made applicable thereto by rules promulgated by the Supreme Court of the United States. * * *"

The Supreme Court promulgated General Orders in Bankruptcy and number 37 of said General Orders, 11 U.S.C.A. following section 53, provides that:

"In proceedings under the Act the Rules of Civil Procedure for the District Courts of the United States shall, in so far as they are not inconsistent with the Act or with these general orders, be followed as nearly as may be. * * *"

Appellee says that rule 65(c), is not applicable, it being inconsistent with the Bankruptcy Act because the Act grants broad powers of restraint and injunction without requiring the posting of bond; that the bond requirement under rule 65(c), is not found in the Bankruptcy Act, hence, he reasons, it will place a limitation upon the powers of the Court of Bankruptcy. He cites no authority for his conclusion, nor does he point to any provisions of the Bankruptcy Act upon which a limitation might be placed by enforcing rule 65(c).

Is a plenary suit a proceeding in bankruptcy? Defendants say it is not. In Westall v. Avery, 4 Cir., 171 F. 626 at page 628, the Court of Appeals said:

"* * * it is also well settled that a proceeding instituted by a bankrupt's

trustee to set aside fraudulent conveyances or illegal preferences is not a proceeding in bankruptcy, but, while ancillary to such proceeding and authorized, by the bankrupt act to be instituted in either the federal District Court or in a state court of competent jurisdiction, it must be governed, so far as pleading and practice is concerned, by the laws and rules of the court wherein it is instituted."

See Kraver v. Abrahams, D.C.Pa., 203 F. 782; Pond v. New York National Exch. Bank, D.C.N.Y., 124 F. 992; McNulty v. Feingold, D.C.Pa., 129 F. 1001. In Remington on Bankruptcy, Vol. 5, sec. 2188, page 315, the author says: "Plenary suits by Trustees are not Proceedings in bankruptcy," but are "controversies" arising out of bankruptcy proceedings. In Collier on Bankruptcy, Vol. 4, sec. 67, page 390, we find the following statement:

"A plenary suit instituted by the trustee under 67(e) has been said to be 'not a proceeding in bankruptcy, but is ancillary to such proceedings and authorized by the Bankruptcy Act to be instituted in either the Federal District Court or in a State Court of competent jurisdiction * * * '".

And on page 391:

"So far as plenary suits brought in a bankruptcy court under sec. 67(e) are concerned, matters of pleading and practice will be governed as nearly as may be by the Federal Rules of Civil Procedure, under the terms of General Order 37."

A plenary suit is not a summary action. Sec. 67 sub. e, makes provision for separate suits where they are necessary to bring claimed assets into the hands of the Trustee. If summary action by the trial court could control the issue here present, why bring the plenary action?

In Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 156, 89 L.Ed. 97, the Court said:

"A bankruptcy court has the power to adjudicate summarily rights and claims to property which is in the actual or constructive possession of the court."

But in the case at bar, the court has no control over the property described in the complaint at this time. The purpose of the suit is to determine whether any or all of the property should be turned over to the Trustee.

Plaintiff further contends that in a court of bankruptcy the court may dispense with an injunction bond being given by a trustee in bankruptcy in a plenary suit. He cites the case In re Barrett, D.C., 132 F. 362, in support of his contention. That case was decided by the District Court of Tennessee about 35 years before the Federal Rules of Civil Procedure were enacted and cannot be considered as an authority in view of rule 65(c).

This rule makes no exceptions to applicants for injunction. It does provide that no such security shall be given by the United States or of any officer or agency thereof. If the Supreme Court had intended to except trustees in bankruptcy in plenary actions, or others from the operation of the rule, it would have so provided.

Section 18 of 38 Stat. 730–738, provides:

"* * * no restraining order or interlocutory order of injunction shall issue, except upon the giving of security by the applicant in such sum as the court or judge may deem proper, conditioned upon the payment of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained thereby."

This section was construed in Robinson v. Benbow, 4 Cir., 298 F. 561, at page 572, wherein the court stated:

"At the time the bill was presented to the learned judge below, he, of course, was bound to assume that its important allegations would be sustained by adequate testimony; but even upon the assumption that the plaintiff upon his showing might have been entitled to some form of restraining order, none should have been issued without demanding from him the bond required

by the express terms of the Clayton Act (38 Stat. 730)."

The above quoted provision of the Clayton Act was incorporated in the Judicial Code, Title 28, Chap. 10, sec. 382, which reads:

"Except as otherwise provided in section 26 of Title 15, no restraining order or interlocutory order of injunction shall issue, except upon the giving of security by the applicant in such sum as the court or judge may deem proper, conditioned upon the payment of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained thereby."

In Yakus v. United States, 321 U.S. 414–440, 64 S.Ct. 660, 675, 88 L.Ed. 834, the Supreme Court said:

"Even in suits in which only private interests are involved the award is a matter of sound judicial discretion, in the exercise of which the court balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction. (Citing cases.) And it will avoid such inconvenience and injury so far as may be, by attaching conditions to the award, such as the requirement of an injunction bond conditioned upon payment of any damage caused by the injunction if the plaintiff's contentions are not sustained. (Citing cases.)" See Doeskin Products v. United Paper Co., 7 Cir., 195 F.2d 356–358.

■ It appears from the restraining order issued by the District Court on October 1, 1952, that its primary purpose was to maintain the status quo, pending the adjudication of the issues presented by the complaint and answer, or until the further order of the court. This being a plenary action, summary jurisdiction does not attach, and a temporary restraining order should not issue without compliance with rule 65(c). To us, the rule seems plain, definite and unmistakable. There is nothing ambiguous about it.

We conclude that the trial court committed error in issuing the temporary restraining order without providing for security as required by rule 65(c) of the Federal Rules of Civil Procedure. The judgment appealed from is reversed, and the cause is remanded.

MAJOR, Chief Judge (dissenting).

In my view, Rule 65(c) is in conflict with the provisions of the Bankruptcy Act and is not controlling. Title 11 U.S.C.A. § 11, which enumerates the jurisdiction and powers of bankruptcy courts, provides that they shall "(7) cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided," and "(13) enforce obedience by bankrupts, officers, and other persons to all lawful orders, by fine or imprisonment or fine and imprisonment." Section 75 of the same Title defines the duties of trustees and, among other things, provides that they shall "collect and reduce to money the property of the estates for which they are trustees, under the direction of the court, and close up the estates as expeditiously as is compatible with the best interests of the parties in interest." Section 107 of the same Title (quoted in Judge Finnegan's opinion) provides that plenary proceedings may be brought where necessary in a state court and "any court of bankruptcy shall have concurrent jurisdiction." The instant proceeding was brought in a bankruptcy court and hence we are not concerned with whether a trustee might be required to give bond if a plenary action was brought in a state court.

As stated in In re Power, 7 Cir., 115 F. 2d 69, 72, referring to a bankruptcy trustee:

"He is an officer of the court, as well as the owner of an interest. It is his duty to collect the assets and he is responsible for failure to do so. He may be charged with the value of assets which never came into his possession, if he fails in his duty to get them into his possession. To bar the court's officer in his quest for assets

there must have been a definite adjudication that the property sought to be recovered by the trustee was not a part of the bankrupt's estate and was not subject to administration by the court."

It thus appears that a trustee is charged with a mandatory duty, under the direction and guidance of the court, to pursue any and all procedures designed to accomplish the statutory objective. Under proper circumstances, the trustee has no alternative but to proceed. Whether such circumstances exist in a given situation is a matter resting in the discretion of the court. To hold that the trustee as a prerequisite to his right to proceed must give a bond, as required by Rule 65(c), is to seriously impinge not only upon his statutory duty but that of the bankruptcy court as well. Such a result is calculated to have a paralyzing effect upon the plan which Congress has promulgated for the administration of bankruptcy estates. This is so for the reason that in many estates the assets would be insufficient to permit the giving of a bond by the trustee and, of course, the trustee would have no interest in and could not be expected to otherwise supply such bond. Thus, a bankrupt who was successful in transferring all of his assets to a third party prior to adjudication would be enabled to clothe such party with immunity from the process of the bankruptcy court. It may be, as urged, that the issuing of a restraining order on the request of the trustee in the absence of a bond will work injury in some instances. However, the discretion lodged in the court can be relied upon to prevent action by a trustee except upon a proper showing and in good faith.

There are cases which, while not directly in point, by analogy support the view which I take. In Magidson v. Duggan, 8 Cir., 180 F.2d 473, a suit was brought in a reorganization proceeding under the Bankruptcy Act by the trustee in a federal court other than that which had jurisdiction of the proceeding. One of the questions urged on appeal was that the District Court erred in not requiring a bond or other security in compliance with Rule 65(c). Relative thereto, the court held, 180 F.2d at page 479:

"The temporary and permanent injunctions issued by the trial court in the instant case were to aid and preserve the court's jurisdiction over the subject matter involved and as such were not limited by Rule 65(c), supra."

Pertinent by analogy also is In re Lustron Corp., 7 Cir., 184 F.2d 789, at page 797, wherein this court (opinion by Judge Lindley) stated:

"RFC raises procedural objections to the restraining order. It is said that the bankruptcy court did not comply with requirements of Federal Rule of Civil Procedure 65(b), 28 U.S.C.A., as to issuance of the order and extending it. We are inclined to believe that the paramount authority of the bankruptcy court under the Bankruptcy Act is such that the rules which apply to ordinary restraining orders are not applicable to restraints of courts and parties, in aid of the Bankruptcy Act."

If Rule 65(b) was inapplicable to a bankruptcy proceeding, as thus indicated, it would follow that Rule 65(c) is also inapplicable. The court in the Lustron case also made a material observation (same page):

"As the trustees were bound, in the performance of their duties, to collect assets and, in pursuance thereof, sought the restraining order to preserve the status, if they, as officers of the court, should have been required to file bonds for costs and damages, they would have been unable to perform their statutory obligations."

I would hold that Rule 65(c) is without application, and whether a bond is required of a trustee under the circumstances of the instant situation is a matter resting in the discretion of the bankruptcy court.