**Murray FERGUSON, Trustee Under Chapter X Proceeding for Equitable Plan Company, Debtor,**

v.

**BUCKS COUNTY FARMS, INC., Appellant.**

**No. 13092.**

United States Court of Appeals Third Circuit.

Argued March 24, 1960.

Decided July 7, 1960.

---

Leon S. Forman, Philadelphia, Pa. (Wexler, Mulder & Weisman, Philadelphia, Pa., on the brief), for appellant.

James B. Doak, Philadelphia, Pa. (Lewis Weinstock, LaBrum & Doak, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

In a plenary action by a Chapter X trustee seeking equity receivership and injunctive relief against the bankrupt's debtor must there be compliance with the provision of Rule 65(c) of the Federal Rules of Civil Procedure, 28 U.S.C. requiring an injunction bond on the issuance of a preliminary injunction?

This interesting issue is presented by this appeal from the District Court's issuance of a preliminary injunction without requiring filing of an injunction bond. Additional issues, relating to the District Court's appointment of a receiver, are also presented.

The critical facts may be summarized as follows:

The defendant, Bucks County Farms, Inc. is a Delaware corporation, registered to do business in Pennsylvania. Its sole business is the rental of eleven farm-like estates or manors for residential use. Of these eleven estates, which contain approximately 800 acres in Bucks County, Pennsylvania, nine were rented during the period here involved and produced a gross monthly rental of between $1,000 and $2,000.[1]

---

1. The testimony at the first hearing in the Court below indicated that the corporation had a monthly income of almost $2,-000 but a subsequent report of the receivers reduced that amount by 50 per cent.

On October 31, 1956, Bucks County Farms, Inc. executed a promissory note in the sum of $150,000 with interest at the rate of 10 per cent per annum payable on April 30, 1958, to the order of the Equitable Plan Company ("Equitable"), a California industrial loan corporation.

On May 29, 1958, Murray Ferguson, plaintiff, was appointed a Trustee for Equitable in a Chapter X Reorganization Proceeding in the District Court for the Southern District of California.[2] By an order of that Court dated September 10, 1959, Ferguson was authorized to institute legal proceedings against Bucks County Farms, Inc. in order to recover funds allegedly due and owing to Equitable.

On September 17, 1959, plaintiff filed a complaint alleging that Bucks County Farms, Inc. owed Equitable the principal sum of $150,000 plus $39,489.30 in accumulated interest. The complaint demanded a judgment in the sum of $189,-489.30 and a writ of foreign attachment on defendant's real estate and other assets. The complaint also prayed for a temporary restraining order and, after hearing, a preliminary injunction against the transfer of any of defendant's real estate.

On the same day, a writ of foreign attachment was issued and in due course was served. On the next day, the requested temporary restraining order was entered. The order also fixed September 28, 1959 as the date for a hearing on the application for a temporary injunction. On September 19, 1959 a copy of this order was served on the defendant's assistant secretary, Jonathan Dunn, an attorney.[3]

At the September 28th hearing defendant was represented by Albert Steinberg, an attorney who had been engaged on the previous day, a Sunday. He in-

formed the District Court that "prominent counsel in Philadelphia" had withdrawn from the case on Saturday. It was not stated when the first attorney had been retained. Steinberg moved for a continuance in order to become more familiar with the facts. It was denied and the hearing proceeded during the balance of the day. At a continued hearing at 2 P.M. the next day defendant's present counsel again sought a continuance which was denied.

At the end of the first day of hearing, plaintiff moved for the appointment of receivers. At the conclusion of the second day of hearing the District Court indicated that a preliminary injunction would be issued and receivers appointed and an order to such effect was entered the following day, September 30, 1959.

On October 2, 1959, defendant filed notice to reconsider the issuance of the preliminary injunction and the appointment of receivers. Defendant also moved to stay the injunction and the appointment of receivers until security was posted to protect the defendant from costs and damages resulting from the injunction and receivership. These motions were denied.

Another hearing was held on October 26, 1959 to afford defendant opportunity to present further testimony. The defendant presented no testimony but requested a hearing de novo on the grounds that it had not received notice of a request for the appointment of receivers until the end of the first day of the original hearing and consequently had been prejudiced in not being able to properly present its case until the bulk of the testimony had been received. Defendant also claimed prejudice from introduction of hearsay evidence and evidence which was irrelevant to the issue of a receiver-

2. There were originally two trustees but Ferguson's co-trustee was discharged by an order of the District Court dated December 31, 1958.

3. On September 22, 1959 a separate action against Bucks County Farms, Inc. was

instituted by the trustees in reorganization of the Swan-Finch Oil Corporation. This action sought, inter alia, an injunction and the appointment of receivers, but no notice of this action was received by Bucks County Farms, Inc. prior to the hearing of September 28, 1959.

ship. The District Court denied the request for a de novo hearing.

This appeal is from the orders of the District Court (a) granting a preliminary injunction prohibiting the transfer of any of the assets of the defendant; (b) appointing receivers; (c) refusing to reconsider the appointment of receivers; and (d) refusing to stay the preliminary injunction and the appointment of receivers until a bond was posted to protect the defendant from damages resulting from the preliminary injunction and the appointment of receivers.

■ Defendant contends that the District Court was guilty of a prejudicial abuse of discretion in not granting its request for a continuance at the time of the original hearing and as a consequence there should be a reversal of its orders granting the preliminary injunction and appointing receivers. Plaintiff, on the other hand, contends that under the circumstances there was no abuse of discretion.

We subscribe to plaintiff's view. Defendant concedes in its brief that "The granting of a continuance is a matter within the sound discretion of the trial court. This discretion is broad and will not be disturbed unless it is plainly abused." Although it is clear that defendant's counsel on the first day of the hearing, and its substituted counsel the next day, each had but a portion of one day to prepare for the hearing, it is equally clear that defendant had been served with notice of the hearing 10 days before it took place. There is nothing in the record to indicate the date on which defendant first sought to employ counsel. Indeed, there is testimony that Dunn, upon whom service was made, was instructed by the president of defendant's parent company "to do nothing" with respect to these proceedings. Furthermore, Dunn was present at the hearing.

The District Court also took steps which avoided any prejudice which may have resulted from the denial of a continuance. At the end of the first day of the hearing, the proceedings were adjourned until 2 P.M. of the following day, affording defendant opportunity to interview and procure witnesses. Approximately one month after the hearing, an additional hearing was held at which counsel for defendant was given opportunity to present further testimony but he did not do so. Defendant claims that the denial of a continuance denied it "a fair hearing and a full opportunity to defend itself" but the defendant points to no specific manner in which it was prejudiced. This situation is clearly different from Sutherland Paper Co. v. Grant Paper Box Co., 3 Cir., 1950, 183 F.2d 926, certiorari denied 340 U.S. 906, 71 S.Ct. 281, 95 L.Ed. 655 where the denial of a continuance prevented the defendant from preparing adequate technical experiments during a period of ill health of the person in charge of preparing the technical material. Here defendant throughout was represented by counsel and by its own conduct indicated that it presented all of the testimony which it desired to present. Under the circumstances we can find no prejudicial abuse of discretion in denying a continuance.

■ Defendant also contends that the appointment of receivers was in error because it did not receive notice of a demand for such relief until the end of the first day of the hearing. In doing so it says:

"Only an emergency or exceptional facts would justify a temporary receiver without notice. Maxwell v. Enterprise Wall Paper Co., 131 F.2d 400 (C.C.A. 3rd, 1942); 1 Clark on Receivers, (1959) Secs. 82 and 83. The instant case contained no basis for urgent action. The service of the attachment and the restraining order preserved the status of the parties and no harm could have occurred from a short delay."

It is clear, however, that this is not a case where a receiver was appointed without the defendant receiving any notice that such action was sought. In the first place defendant did receive notice that plaintiff sought an *injunction* against the transfer of any of defend-

ant's assets. Thus, in Elk Fork Oil & Gas Co. v. Foster, 4 Cir., 1900, 99 F. 495, the appointment of receivers on the District Court's own motion was affirmed although the only prayer for relief had been for an injunction. The Court there quoted (at page 498) Section 98 of High on Receivers:

"It would seem that a receiver may be appointed, in a case otherwise proper for relief, if the facts show the necessity for the relief, and the proper parties are before the court, although the application was made for an injunction, and did not specify the appointment of a receiver."

Secondly, defendant received notice of the application for the appointment of receivers at the end of the first day of the hearing—prior to the presentation of its case. Thus it had the opportunity to present whatever it desired by way of testimony or argument in opposition to the appointment of receivers *before* the appointment was made. Finally, defendant not only made a motion to reconsider and dismiss the application for the appointment of receivers, but it was also given an opportunity to present further testimony and argument with respect to the appointment approximately one month after the appointment was made. As the Eighth Circuit has said:

"* * * the reason of the thing inexorably constrains the conclusion, that lack of antecedent notice of the appointment of a receiver is cured and becomes immaterial, when a party, who objects to the appointment of a receiver, is later given an opportunity to appear and be heard on a motion to set aside and vacate such orders of appointment. And so the cases hold. Supreme Council of Royal Arcanum v. Hobart, (C.C.A.) 244 F. 385; 53 C.J. 61; Boyd v. Brown, 79 Colo. 568, 274 [should be 247] P. 181; West v. Chasten, 12 Fla. 315; Hancock v. Am. Bonding & Co., 86 Ill.App. 630." Kattelman

v. Madden, 8 Cir., 1937, 88 F.2d 858, 863.

The third point raised by defendant on this appeal is that the appointment of receivers was improper under the evidence adduced. It points to the fact that plaintiff was a simple creditor who had issued foreign attachment served upon its real property. Consequently, defendant contends there was an adequate remedy at law and receivers should not have been appointed. It also states that the District Court made no finding of "insolvency", and, under the evidence, could not have made such a finding, although it admits that its income "is insufficient to meet its current expenses" when payments on mortgages are included. Defendant also contends that the evidence did not show mismanagement or fraud or influence by one Lovell Birrell and as a consequence the "rather drastic" remedy of a receivership was improper.

Plaintiff, on the other hand, points to evidence which he contends supports the order appointing receivers. A review of the evidence establishes that the District Court did not abuse its discretion in appointing receivers.

Plaintiffs theory and proofs were that there was not only a substantial possibility that defendant's assets would be improperly transferred but also that there was "imminent and substantial danger" that its assets would be dissipated by "heavy and needless" expenditures. There were numerous examples of this. For instance, Birrell's former secretary was employed for several months by defendant and yet it is admitted she did nothing to warrant payment of a salary to her; telephone bills of Birrell's brother-in-law were paid by defendant; the management fee paid to the defendant's managing agent was larger than its average monthly rental income during 1959.[4] Circumstances such as these, coupled with large accumulated unpaid debts and the inability to pay current obligations, makes it clear

4. As revealed by the subsequent report of the receivers.

that there was no abuse of discretion in appointing receivers.

The final point raised on this appeal is that the District Court erred in not staying the preliminary injunction and the appointment of receivers until security was posted to protect defendant from damages resulting from the injunction and the receivership. These are actually two separate issues: (1) whether a bond is required prior to the appointment of a receiver and (2) whether a bond is required prior to the issuance of a preliminary injunction. As to the former point the appellant states:

"Although no Rule or Statute specifically requires a bond before the appointment of a receiver, outside of the Bankruptcy Act, the inherent equity power of the Court is sufficient to enable the judge to impose such a requirement."

Be that as it may, defendant's asserted grievance is baseless because the record discloses that the District Court did require a receiver's bond in the sum of $10,000 and it was duly entered.

■ That brings us to the issue stated at the outset of this opinion as to whether in a plenary action by a Chapter X trustee seeking injunctive relief against a bankrupt's debtor there must be a compliance with the provision of Rule 65(c) [5] requiring an injunction bond on the issuance of a preliminary injunction.

The issue has been ruled on by the courts of appeals of the Seventh and Second Circuits, in the order stated, and they are in conflict. In each instance the courts were divided.

In Chatz v. Freeman, 1953, 204 F.2d 764 the Seventh Circuit, Judge Major dissenting, held that Rule 65(c) is applicable in a plenary action by a trustee

in bankruptcy and an injunction cannot issue without the posting of security.

In so ruling the Court stated (at page 768):

"This being a plenary action, summary jurisdiction does not attach, and a temporary restraining order should not issue without compliance with rule 65(c). To us, the rule seems plain, definite and unmistakable. There is nothing ambiguous about it."

Judge Major in his dissenting opinion stated (at page 768):

"In my view, Rule 65(c) is in conflict with the provisions of the Bankruptcy Act and is not controlling."

and at page 769:

"To hold that the trustee as a prerequisite to his right to proceed must give a bond, as required by Rule 65(c), is to seriously impinge not only upon his statutory duty [to collect the assets of the bankrupt's estate] but that of the bankruptcy court as well. Such a result is calculated to have a paralyzing effect upon the plan which Congress has promulgated for the administration of bankruptcy estates."

The Second Circuit, the late Judge Frank dissenting, agreed with the views expressed by Judge Major, and held Rule 65(c) not to be applicable in a plenary action by a bankruptcy trustee, in Halpert v. Engine Air Service, 2 Cir., 1954, 212 F.2d 860, certiorari granted, 348 U.S. 854, 75 S.Ct. 79, 99 L.Ed. 673, dismissed by stipulation, 350 U.S. 801, 75 S.Ct. 907, 100 L.Ed. 721.

In doing so it stated, Note 2, at page 863 of 212 F.2d:

"The case of Chatz v. Freeman, 7 Cir., 204 F.2d 764, cited by neither party, is in direct conflict with our conclusion expressed above. How-

---

5. Rule 65(c) provides in relevant part as follows:

"Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained * * *."

ever, this was a decision by a divided court. We agree with the majority opinion that the language of Rule 65 (c) is plain and unmistakable. But we also agree with the dissenting opinion that Rule 65(c), although plainly stated, is not applicable to the situation presented and is not intended or effective to nullify or modify the power to issue injunctive orders without bond plainly conferred upon the Bankruptcy Court by Sec. 2, sub. a(15) of the Bankruptcy Act."

Judge Frank in his dissenting opinion, expressed his agreement with the majority opinion in Chatz v. Freeman, supra, and said (212 F.2d at page 864):

"I think the district court erred in not requiring a bond pursuant to F.R.C.P. 65(c) and General Order in Bankruptcy No. 37, 11 U.S.C.A. following section 53."

It may be noted at this juncture that General Order in Bankruptcy No. 37, referred to by Judge Frank, provides in relevant part as follows:

"In proceedings under the [Bankruptcy] Act the Rules of Civil Procedure for the District Courts of the United States shall, in so far as they are not inconsistent with the Act or with these general orders, be followed as nearly as may be * * *."

It may be further stated that the majority in Halpert v. Engine Air Service, supra, made no reference to General Order No. 37 even though Chatz v. Freeman, supra, had referred to it and noted that by virtue of its provisions the Federal Rules of Civil Procedure are made generally applicable to plenary suits instituted by bankruptcy trustees.

It is difficult to reconcile the Second Circuit's holding in Halpert with its earlier rulings that "The Federal Rules of Civil Procedure are applicable in bankruptcy." I. & I. Holding Corporation v. Greenberg, 2 Cir., 1945, 151 F.2d 570, 572, certiorari denied sub. nom. Greenberg v. I. & I. Holding Cor., 327 U.S. 781, 66 S.Ct. 681, 90 L.Ed. 1009; Perlman v. 322 West Seventy-Second Street Co., 2 Cir., 1942, 127 F.2d 716, 718; Kroell v. New York Ambassador, Inc., 2 Cir., 1939, 108 F.2d 294. In the Perlman case it was specifically stated (127 F.2d at page 718) that the Federal Rules of Civil Procedure are " * * * applicable to bankruptcies 'as nearly as may be' by General Order No. 37 . . . .."

It should be noted, however, that in Halpert the plenary action was instituted in the same district court in which the bankruptcy was pending and the court adverted to that fact although it did not premise its ruling on its existence.

In connection with Halpert it must be observed that the Second Circuit cited Magidson v. Duggan, 8 Cir., 1950, 180 F.2d 473, certiorari denied 339 U.S. 965, 70 S.Ct. 1000, 94 L.Ed. 1374, in support of its view. Magidson was also cited by Judge Major in his dissenting opinion in Chatz.

The Magidson case is not analagous in any respect to the problem presented in Chatz and Halpert or the instant case.

In Magidson the bankruptcy court, at the instance of a Chapter X trustee, enjoined further proceedings in a state court action where the same issues were involved as in a plenary action by the trustee in the federal court in the same district. The injunctive process was there called into play in the exercise of the bankruptcy court's jurisdiction to protect the assets of the estate, and as the Eighth Circuit stated (180 F.2d at page 479) "to aid and preserve the court's jurisdiction over the subject matter involved."

7 Moore, Federal Practice, par. 65.02 (3) at pp. 1614–15, and par. 65.09 p. 1655 (2d ed. 1954), stresses the distinction between the "protective" injunction granted in the exercise of the bankruptcy court's summary jurisdiction in Magidson and an injunction issued in a plenary "civil" action brought by a bankruptcy trustee.

Further, in par. 65.02(3) at page 1615, Moore, noting the conflict between the Second and Seventh Circuits, in Halpert

and Chatz, respectively, subscribes to the ruling in Chatz that "security must be given in accordance with Rule 65(c)" in plenary actions brought by a bankruptcy trustee. It does so on the premise that a plenary action is similar to "any other civil action". On the latter score, Moore, in discussing Rules 81(a) [6] of the Federal Rules of Civil Procedure at par. 81.04 (1) pages 4433–34 states:

"A plenary action brought by the bankruptcy trustee (receiver or debtor continued in possession) against third parties, or vice versa, is not a proceeding in bankruptcy but an ordinary civil action; and when this action is brought in a federal district court the Federal Rules are applicable to it.

"Proceedings in bankruptcy, on the other hand, embrace matters over which the bankruptcy court, qua bankruptcy court, has summary jurisdiction such as those proceedings technically known as proceedings in bankruptcy and controversies arising in proceedings in bankruptcy. As to these, the Federal Rules are by their own force, inapplicable, by virtue of Rule 81(a). * * * The Federal Rules are, however, generally applicable to proceedings in the bankruptcy court by virtue of General Order 37 * * * promulgated by the Supreme Court."

To the same effect see 4 Collier on Bankruptcy, par. 67.47, pp. 483–84, (14th ed. 1954); 5 Remington on Bankruptcy, § 2188, pp. 16–17 (1960 Supplement); Comment, 103 U.Pa.L.Rev. 433, 434 at n. 11 and cases therein cited (1954), and Comment, 67 Harv.L.Rev. 512 (1954).

The distinction between the summary jurisdiction of the bankruptcy court and plenary actions was emphasized in Cline v. Kaplan, 1944, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97. There the Supreme Court stated (323 U.S. at pages 98–99, 65 S.Ct. at page 156):

"A bankruptcy court has the power to adjudicate summarily rights and claims to property which is in the actual or constructive possession of the court. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 629, 84 L.Ed. 876. If the property is not in the court's possession and a third person asserts a *bona fide* claim adverse to the receiver or trustee in bankruptcy, he has the right to have the merits of his claim adjudicated 'in suits of the ordinary character, with the rights and remedies incident thereto.' Galbraith v. Vallely, 256 U.S. 46, 50, 41 S.Ct. 415, 416, 65 L.Ed. 823; Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770. * * * Once it is established that the claim is not colorable nor frivolous, the claimant has the right to have the merits of his claim passed on in a plenary suit and not summarily. Of such a claim the bankruptcy court cannot retain further jurisdiction unless the claimant consents to its adjudication in the bankruptcy court. MacDonald v. Plymouth County Trust Co., 286 U.S. 263, 52 S.Ct. 505, 76 L.Ed. 1093."

What has been said impels us to subscribe to the view of the Seventh Circuit in Chatz v. Freeman, supra, that Rule 65(c) is applicable in plenary actions to which bankruptcy trustees or officers are a party. Accordingly, we conclude that the District Court erred in the instant case in not requiring the filing of security on its issuance of a preliminary injunction.

For the reasons stated the Order of the District Court appointing Receivers will be affirmed and its "Preliminary Injunction Order" will be stayed and the cause remanded with instructions to proceed in accordance with this opinion.

6. Rule 81(a) (1) provides in relevant part: "* * * These rules do not apply * * * to proceedings in bankruptcy * * * except in so far as they may be made applicable thereto by rules promulgated by the Supreme Court of the United States."